UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT KNOXVILLE

| | |
|---|---|
| NANCY ISAAC, and husband, ROGER ISAAC, ) <br> ) <br> Plaintiffs, ) <br> ) <br> v. ) <br> ) <br> TF-UNIVERSE, LLC, ) <br> ) <br> Defendant. ) | No. 3:16-CV-47-CCS |

## **MEMORANDUM AND ORDER**

This case is before the undersigned pursuant to 28 U.S.C. § 636(c), Rule 73(b) of the Federal Rules of Civil Procedure, and the consent of the parties, for all further proceedings, including entry of judgment [Doc. 10].

Now before the Court is Defendant Bass Pro Outdoor World, LLC's Motion for Summary Judgment [Doc. 44].[1] The Plaintiff filed a Response [Doc. 46] objecting to the Motion, and the Defendant filed a Reply [Doc. 48]. Further, the Plaintiffs filed a Supplemental Response [Doc. 49], which the Court has also considered.[2] The Motion is now ripe for adjudication. Accordingly, for the reasons more fully explained below, the Court **DENIES** the Motion for Summary Judgment [**Doc. 44**].

---

[1] Defendant Bass Pro Outdoor World, LLC, was dismissed by agreement of the parties on August 3, 2016. [Doc. 42]. It appears that the title of the Defendant's Motion is a typographical error.

[2] The Court notes that Local Rule 7.1 provides, "No additional briefs, affidavits, or other papers in support of or in opposition to a motion shall be filed without prior approval of the Court, except that a party may file a supplemental brief of no more than 5 pages to call to the Court's attention developments occurring after a party's final brief is filed." E.D. Tenn. L.R. 7.1(d). The Plaintiffs did not seek leave of Court to file their supplemental Response, nor did the Response call the Court's attention to new developments. While the Court has reviewed and considered the supplemental filing, the Plaintiffs are hereby **ADMONISHED** for the failure to follow the Local Rules of this Court.

I.   **BACKGROUND**

The Complaint was originally filed in the Circuit Court for Sevier County, Tennessee, but was later removed [Doc. 1] to this Court on January 25, 2016. The Complaint arises out of personal injuries sustained when Plaintiff Nancy Isaac tripped on December 28, 2014, over a piece of concrete placed in the parking lot of a Bass Pro store located at 3629 Sportsmann Place, Kodak, Tennessee 37764 [Doc. 1-1 at ¶¶ 6-7.]. Specifically, the Plaintiffs allege that the parking lot was insufficiently lit and that the Defendant failed to make the concrete barrier visible or to warn Plaintiff Nancy Isaac of the existence of poor lighting or the visibility of the concrete barrier. [*Id*.]. The Compliant relies upon the doctrine of res ipsa loquitur in reference to the Defendant's premises being in an unreasonable and dangerous. [*Id.* at ¶ 8]. Further, the Plaintiffs allege that the Defendant's negligence was the direct and proximate result of Plaintiff Nancy Isaac's personal injuries and that as a result of the negligence, Plaintiff Roger Isaac suffered the loss and diminution of services and consortium of his wife. [*Id.* at ¶¶ 9-10].

In briefing the Motion, the parties have submitted excerpts from Plaintiff Nancy Isaac's deposition, excerpts from Plaintiff Roger Isaac's deposition, and the Affidavit of Gary Lee Cobble, the Defendant's expert witness.

### A. Plaintiff Nancy Isaac's Deposition Testimony

Plaintiff Nancy Isaac testified that on December 28, 2014, her husband, Plaintiff Roger Isaac, wanted to buy some fishing bait and that Bass Pro was ready to close at 9:00 p.m. [Doc. 46 at 4]. Plaintiff Nancy Isaac dropped Plaintiff Roger Isaac off at the front entrance of the store and then drove the camper around the parking lot to park. [*Id.* at 4, 6]. While she was driving, "[i]t was so dark that [she] drove over "one of those cement things." [*Id.* at 16]. She testified that she did not see the concrete barrier but that she "felt it when [she] went 'thump' over it." [*Id.*].

Plaintiff Nancy Isaac testified that once she came to a stop, she got out of the driver's side door, walked around the camper, and noticed that it was sitting on top of the "parking thing." [*Id.* at 19]. She described that she was straddling the parking stop. [*Id.* at 18]. After Plaintiff Nancy Isaac exited the vehicle, she "got the dogs' cage out, walked back around and put it on that green spot." [*Id.* at 19]. She then got two Pomeranians and dropped them off. [*Id.* at 19-20]. As she "started to go back to get two more," that is when she fell. [*Id.* at 19]. Plaintiff Nancy Isaac stated that she crossed over the concrete parking stop twice before she fell. [*Id.* at 45]. She testified that there were no lights and that it was "pitch black." [*Id.* at 17]. She continued that the ambulance and police came and that everyone who had a flashlight had it on so that they could see. [*Id.*]. She testified that the light pole was not there at the time of the fall or that if there were lights there, they were not working. [*Id.* at 22]. Plaintiff Nancy Isaac repeated, "It was just so dark that you couldn't see anything." [*Id.* at 43]. With respect to the concrete barrier, Plaintiff Nancy Isaac testified, "Yes, it should have been painted like this color or something because it blended in so well that you couldn't see it." [*Id.* at 44].

### B. Plaintiff Roger Isaac's Deposition Testimony

Plaintiff Roger Isaac testified during his deposition that the lighting where the camper was parked "wasn't very good." [Doc. 46 at 47]. He could not recall whether there was a light pole at the time of the fall. [*Id.*]. Further, Plaintiff Roger Isaac testified that he could not see anything and that he could barely see Plaintiff Nancy Isaac. [*Id.* at 48]. He stated that when the ambulance arrived, "[T]hey had to turn the lights on to see her because she was on the back side of that camper and there was no light." [*Id.* at 49]. He further testified, "It was pitch black back there." [*Id.*].

### C. Mr. Gary Cobble's Affidavit

In support of its Motion for Summary Judgment, the Defendant submitted the expert opinion of Mr. Gary Cobble. [Doc. 44-1]. Mr. Cobble visited the parking lot on October 27, 2016, and January 19, 2017, in order to inspect the subject concrete curb and lighting at the location. [*Id.* at ¶ 3]. Mr. Cobble states that the six inch concrete curb was designed as an integral part of the parking lot's surface water drainage and that it was not required to be painted per the engineering's design plan and drawings. [*Id.* at ¶ 4]. Further, Mr. Cobble states that he discussed the site design plans of the subject parking lot with Mr. Butch Stott, the Director of Code Enforcement for the City of Sevierville, and learned that the site design plans for the subject parking lot was approved by the Sevierville Planning Commission on June 3, 2004, and again on February 3, 2005, and that the building permit was issued on June 27, 2005. [*Id.* at ¶ 5]. On review of the "As-Built Survey," Mr. Cobble was able to determine as follows:

> [T]he subject line pole at the location of the Plaintiff's fall has been located there since December 22, 2005. I also physically measured the location of the light pole from 4 strategic physical points in the parking lot to further verify the location of the subject light pole corresponds to the survey measurements and I was able to conclude that according to the survey, the subject light has been there since 2005 and in fact was in place at the time of the subject incident which occurred on December 28, 2014.

[*Id.* at ¶ 6]. Mr. Cobble continues that he took 19 light meter readings on the asphalt parking lot and the concrete curb and that the readings were taken from the nearest light pole extending to the grass island. [*Id.* at ¶ 7]. Mr. Cobble states that the highest light meter reading was 1.0 fc, with the lowest light meter reading of .2 fc, and an average light meter reading of 0.65 fc. [*Id.*].[3] He submits that through his light meter testing, he was able to determine that the lighting of the parking lot was in compliance with the recommended standards of the Standard Building Code ("SBC"),

---

[3] The letters "fc" mean "foot candle." [Doc. 44-1 at 35].

although the SBC does not mandate lighting and illumination standards for parking lots. [*Id*.]. Moreover, Mr. Cobble states that the light pole, lighting, and the concrete curb in the area are constructed as designed and as approved by the Code Enforcement Department of the City of Sevierville. [*Id.* at ¶ 8]. Mr. Cobble concludes: "Furthermore, it is my opinion that the subject light pole at the location of Ms. Isaac's fall incident was in place at that time and had been in place since 2005. Also, it is my opinion that the lighting levels, even though not required, are consistent with the 1999 Standard Building Code." [*Id.*].

## II. POSITIONS OF THE PARTIES

The Defendant moves for summary judgment, arguing that there are no genuine issues of material fact and that it is entitled to judgment as a matter of law. The Defendant submits that Plaintiff Nancy Isaac cannot establish a negligence claim because no defective condition existed on the premises. In support, the Defendant argues that its expert, Mr. Cobble, visited the parking lot and performed inspections on October 27, 2016, and on January 19, 2017. The Defendant submits that its expert found as follows: (1) the curb was designed as an integral part of the parking lot's surface water drainage; (2) the curb was not required to be painted per the engineer's design plan and drawings; (3) the parking lot where the curb is located is within the city limits of Sevierville, Tennessee, and that the parking lot was approved by the Sevierville Planning Commission; (4) the light pole at the location of Plaintiff Nancy Isaac's fall has been located there since December 22, 2005; and (5) the light meter readings taken on October 27, 2016, of the parking lot met the standards of the SBC, although not required to meet such standards. The Defendant continues that the evidence in the record shows that no dangerous defect existed at the time of Plaintiff Nancy Isaac's fall because the light pole adjacent to where she fell provided sufficient lighting for the area. The Defendant asserts that during Plaintiff Nancy Isaac's

deposition, she claimed that the light pole shown on the aerial photographs was not there; however the Defendant argues that such allegation can be disproven by Mr. Cobble.

Furthermore, the Defendant argues that Plaintiff Nancy Isaac's own negligence bars recovery in this matter. The Defendant asserts that even if dangerous conditions existed, the evidence presented demonstrates that reasonable minds cannot differ that Plaintiff Nancy Isacc was at least 50% more at fault for her own fall. The Defendant contends that Plaintiff Nancy Isaac was fully aware of the existence of the curb. The Defendant states that she drove over it and felt a "thump" and that after she parked her vehicle and exited, she realized that her vehicle was sitting on top of the curb. In addition, the Defendant submits that Plaintiff Nancy Isaac walked back and forth over the curb multiple times while removing her dogs from her vehicle. The Defendant asserts that Plaintiff Nancy Isaac's own comparative fault completely bars recovery in this case.

The Plaintiffs filed a Response [Doc. 46] objecting to the Motion. The Plaintiffs assert that Defendant's expert relies on light meter readings taken almost two years after Plaintiff Nancy Isaac's injury. In addition, the Plaintiffs assert that the Defendant does not address the need for the curb to be painted or to be visible. The Plaintiffs aver that the Defendant ignores their allegation that the parking lot was too dark and unreasonably lit causing a hazard and that the car stop was a hazard since it was not made to be reasonably visible. The Plaintiffs also list a number of material facts at issue that they argue the jury should determine. The Plaintiffs contend that the jury should decide whether Plaintiff Nancy Isaac is comparatively negligent or if she assumed the risk of injury.

The Defendant filed a Reply [Doc. 48] arguing that the Plaintiffs failed to demonstrate any disputed issue of material fact that would defeat its Motion. The Defendant asserts that it has presented evidence demonstrating that the lighting at or near where Plaintiff Nancy Isaac fell was

sufficient. The Defendant argues that the Plaintiffs have not put forth any evidence countervailing Mr. Cobble's testimony. The Defendant contends that the Plaintiffs failed to present any facts that the light pole was not there or that it was not functioning. Further, the Defendant argues that the Plaintiffs do not point to any law or regulation that requires the curb to be painted. The Defendant submits that it has offered the testimony of Mr. Cobble, who states that the plans for the parking lot did not require the curb to be painted. In addition, the Defendant submits that Plaintiff Nancy Isaac is more than 50% at fault because she actively sought out the most remote part of the parking lot, she ran over the curb and parked in a manner that is not an intended parking place for customers, and the unusual parking maneuver affirmatively blocked the light from the light pole. Further, the Defendant submits that it was not reasonably foreseeable for it to anticipate that Plaintiff Nancy Isaac would park her vehicle in such a manner and fail to see the curb that she stepped over at least three times before her fall.

The Plaintiffs filed a supplemental Response to the Defendant's Reply [Doc. 49]. The Plaintiffs assert that in the Defendant's Reply, it argued that the Plaintiffs did not submit any evidence. The Plaintiffs contend that they submitted their depositions. Further, the Plaintiffs contend that while the Defendant relies heavily on Mr. Cobble's testimony, such reliance does not eliminate issues of material fact. The Plaintiffs aver that Mr. Cobble's testimony presents additional issues of material fact.

### III. STANDARD OF REVIEW

Summary judgment under Rule 56 of the Federal Rules of Civil Procedure is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party bears the burden of establishing that no genuine issues of material fact exist. *Celotex Corp. v. Catrett*, 477 U.S. 317,

7

330 n. 2 (1986); *Moore v. Philip Morris Cos., Inc.*, 8 F.3d 335, 339 (6th Cir. 1993). All facts and all inferences to be drawn therefrom must be viewed in the light most favorable to the non-moving party. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Burchett v. Kiefer*, 301 F.3d 937, 942 (6th Cir. 2002).

"Once the moving party presents evidence sufficient to support a motion under Rule 56, the nonmoving party is not entitled to a trial merely on the basis of allegations." *Curtis v. Universal Match Corp.*, 778 F. Supp. 1421, 1423 (E.D. Tenn. 1991) (citing *Celotex*, 477 U.S. at 317). To establish a genuine issue as to the existence of a particular element, the non-moving party must point to evidence in the record upon which a reasonable finder of fact could find in its favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The genuine issue must also be material; that is, it must involve facts that might affect the outcome of the suit under the governing law. *Id.*

The Court's function at the point of summary judgment is limited to determining whether sufficient evidence has been presented to make the issue of fact a proper question for the finder of fact. *Anderson*, 477 U.S. at 250. The Court does not weigh the evidence or determine the truth of the matter. *Id.* at 249. Nor does the Court search the record "to establish that it is bereft of a genuine issue of material fact." *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1479-80 (6th Cir. 1989). Thus, "the inquiry performed is the threshold inquiry of determining whether there is a need for a trial—whether, in other words, there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Anderson,* 477 U.S. at 250.

## IV. ANALYSIS

As mentioned above, the Defendant moves for summary judgment arguing that there are no genuine issues of material fact in this matter. The Court disagrees.

To state a claim for negligence, a plaintiff must allege: "(1) a duty of care owed by the defendant to the plaintiff; (2) conduct by the defendant falling below the standard of care amounting to a breach of the duty; (3) an injury or loss; (4) causation in fact; and (5) proximate causation." *Rice v. Sabir*, 979 S.W.2d 305, 308 (Tenn. 1998). In the context of negligence based on premises liability, the owner of real property has a duty to exercise reasonable care under all the circumstances to protect guests from unreasonable risks of harm. *Id.* "The duty includes the responsibility to remove or warn against latent or hidden dangerous conditions on the premises of which one was aware or should have been aware through the exercise of reasonable diligence." *Id.* A condition is dangerous if it is reasonably foreseeable that the condition could probably cause harm or injury. *Id.* If injuries of the type that occurred could not have been reasonably foreseen, a duty of care never arises. *See id.*

Courts have cautioned, however, that the "duty imposed on the premises owner or occupier, however, does not include the responsibility to remove or warn against 'conditions from which no unreasonable risk was to be anticipated, or from those which the occupier neither knew about nor could have discovered with reasonable care.'" *Matherne v. West*, No. E201502061COAR3CV, 2016 WL 6311283, at *11 (Tenn. Ct. App. Oct. 28, 2016) (quoting Prosser and Keeton on Torts, § 61). Courts have further explained that "Tennessee case law does not automatically insulate a premises owner from a duty of care or liability simply because the danger was open and obvious." *Id.* at *13.

The Defendant asserts that the instant matter is similar to *Goumas v. Mayse*, No. 2013-01555-COA-R3CV, 2014 WL 1713195 (Tenn. Ct. App. Apr. 29, 2014). In *Goumas*, the plaintiff fell on a rock while working on defendants' property. *Id.* at *1. The trial court granted summary judgment in favor of the defendants finding that plaintiff was familiar with the property and that the plaintiff failed to submit proof of the following: that the rock in any way was unusual or posed any particular danger; that the rock was hidden or concealed; that the rock created any kind of defect, danger or trap; that the defendants knew or should have known of the rock's existence or location; and that the defendants' property presented him with any known of foreseeable risk of injury. *Id.* at *2. The plaintiff appealed the trial court's determination that the defendants owed no duty to the plaintiff, and therefore, did not breach any duty. *Id.*

The Tennessee Court of Appeals held that there were no disputed material facts presented in the record and affirmed the trial court's decision. *Id.* at *8-10. The court reasoned that the rock that the plaintiff tripped on was *easily visible*, in an area with no obstructions, so that it was truly open and obvious. *Id*. at *8. Further, the court noted that the plaintiff admitted having seen the rock and stepped over it multiple times before his misstep, so he knew the rock was there. *Id.* The court found that "plaintiff had at least equal, and probably superior, knowledge of the condition of the premises at issue." *Id.*

The Court finds that the facts presented in *Goumas* are different than the facts presented before it. Here, there are material issues of fact with respect to whether the parking lot was adequately lit, making the concrete barrier visible. The Plaintiffs contend that the parking area where Plaintiff Nancy Isaac fell and was injured was inadequately lit or unlit at approximately 8:30 p.m., on December 28, 2014. [Doc. 46 at 4]. The Defendant has shown evidence of the following: (1) that a light pole was in proximity to where Plaintiff Nancy Isaac fell on the date of

10

the accident, December 28, 2014; (2) that approximately two years later on October 27, 2016, Defendant's expert witness, Mr. Cobble, took light meter readings that read from 1.0 fc (foot candle) to low of 0.2 fc, with an average of .65 fc, which complied with the 1999 SBC (although not mandated for illumination standards for parking lots); and (3) that the visibility on October 27, 2016, at night appears good as was shown in the photographs taken that night. *See* [Doc. 44 at 3].

However, what the Defendant has not shown is any evidence that the lights on the light pole where actually on (or whether they were unlit, fully lit, or partially lit on the day of the accident).[4] Further, Plaintiff Nancy Isaac testified that there were no lights in that area and that it was pitch black, *see* [Doc. 46 at 17], and if there were lights on the pole, they were not working, *see* [*Id.* at 22], and that it was so dark that "you couldn't see the hand in front of your face," *see* [*Id.*].[5]

Further, Plaintiff Roger Isaac testified that the light that night was not good, *see* [*Id.* at 47], he could not recall if lights were on or not but that it was dark, *see* [*Id.*], he could not really see the parking stop because it was too dark, *see* [*Id.* at 48], that he could barely see Plaintiff Nancy Isaac when he arrived, *see* [*Id.*], and that the ambulance had to turn on the lights to see Plaintiff Nancy Isaac because on the back side of the camper, there were no lights and that it was pitch black, *see* [*Id.* at 49].

Thus, the nature and the extent of the actual lighting, the lighting conditions and visibility on December 28, 2014, at approximately 8:30 p.m., is a material question of fact. The Defendant's expert's evidence, particularly the later taken photographs, are either directly opposed to the testimony of both Plaitniffs in regard to the lighting conditions at the time of the accident, or not

---

[4] Apparently, there are four lights on each light pole. *See* [Doc. 44-1 at 11] (Plaintiff Nancy Isaac's Deposition) and [*Id.* at 23] (Exhibit 4 to Plaintiff Nancy Isaac's deposition).

[5] The Court notes that both of these deposition pages of Plaintiff Nancy Isaac's testimony were omitted from the portion of the deposition transcript that was attached to the Defendant's Motion—as was Plaintiff Roger Isaac's deposition testimony.

contradictory at all as to the lighting conditions on the night of the accident. The lighting conditions have a direct correlation to the Defendant's liability and to Plaintiff Nancy Isaac's comparative fault, if any. If the jury believes it was as dark as both Plaintiffs claim (*i.e.,* pitch black with no lights), the jury might believe the lights were not on or not at sufficient capacity to adequately light the parking area where Plaintiff Nancy Isaac was parked. However, the jury may not believe Plaintiffs or may believe that the light was as the Defendant's expert purports. Whatever the jury believes will likely affect their finding as to the Defendant's liability, as well as whether the alleged danger was open and obvious that night, and/or whether Plaintiff Nancy Isaac was negligent in traversing the area where she fell. Accordingly, because this is a dispute of fact for the jury, the Court finds summary judgment is not appropriate. All other issues regarding liability, including the nature and extent of Plaintiffs' knowledge of the condition, prior contact therewith and comparative fault issues and apportionment, are likewise factual disputes for the jury.

## V. CONCLUSION

Accordingly, for the reasons explained above, the Defendant's Motion for Summary Judgment [**Doc. 44**] is **DENIED**. This case remains set for trial on **August 29, 2017.**

**IT IS SO ORDERED**.

ENTER:

s/ C. Clifford Shirley, Jr.
United States Magistrate Judge